**Bennett LEWIS, III, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 12–81–0050–CR.

Court of Appeals of Texas, Tyler.

March 24, 1983.

Discretionary Review Refused June 29, 1983.

Howard D. Pattison, Athens, for appellant.

Richard Handorf, Dist. Atty., Athens, for appellee.

McKAY, Justice.

Appellant was convicted of murder and his punishment was assessed at confinement for life.

In his first ground of error appellant contends the trial court erred in denying his motion for change of venue. A number of cases are cited by appellant for the proposition that if there exists in the county so great a prejudice against him that he could not obtain a fair and impartial trial, a motion for change of venue should be granted. See Art. 31.03(a)1, Tex.Code Crim.P.[1]

The record contains a transcript of the voir dire examination of the jury panel. Appellant's counsel did not ask a number of jurors on the panel whether they had heard or read anything about the case. Of those who were asked whether they had heard or read anything about the case there were only six who answered affirmatively; however, all six answered that they had formed no opinion about the case and could be fair and impartial. They were not challenged for cause. There were twelve prospective jurors who said they had never heard of the case or had not read of it. Four panel members said they had read about it, but had formed no opinion and could be fair jurors. There were three or four panel members who were excused because they knew appellant or his family or lived in the same community. No jurors to whom an objection was made by appellant remained on the panel.

A number of newspapers containing some item related to this case are among the exhibits.

■ Every defendant in a criminal case is guaranteed a fair trial by an impartial jury by both the Texas Constitution and the United States Constitution, and due process entitles one to a change of venue when he demonstrates his inability to obtain a fair trial in the county where venue is laid. *Henley v. State,* 576 S.W.2d 66, 69 (Tex.Cr. App.1979), and cases cited.

■ In *Morris v. State,* 488 S.W.2d 768, 772 (Tex.Cr.App.1973) citing *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, it is said:

Our courts cannot and do not operate in a vacuum. Courts deal with people and crimes which are newsworthy. To require a trial of jurors who had never heard of a highly publicized crime would be impractical if not impossible. Certainly, it was never intended that jurors were to be selected from those who did not read newspapers or keep up with current events through other media. Jurors selected from such a group, if there are enough to be called a group, would not be representative. To hold otherwise would be to hold that the perpetrator of a very highly publicized crime such as the assassination of a president, a governor or any widely known person could never be tried.

It seems significant that appellant did not object to any juror who was seated. The first ground of error is overruled. The voir dire examination of the panel demon-

---

1. Articles cited are from Texas Code of Criminal Procedure unless otherwise indicated.

strated that the trial court properly overruled the motion for a change of venue.

Appellant maintains in his second ground that the trial court erred in admitting, over his objection, evidence obtained by virtue of a search warrant because the search warrant was issued without showing that the informant was reliable and credible. During the trial the State introduced a number of exhibits that were obtained by the execution of the search warrant. Several of the exhibits were photographs taken on the Bennett Lewis farm where the State claimed appellant shot and killed Thomas Kinder.

The affidavit for the search warrant was signed and sworn to by Michael O'Brian, and reads in part as follows:

5. AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS:

The affiant, Michael O'Brien is a criminal investigator for the 3rd Judicial District of Texas, conprising [sic] of Henderson, Anderson and Houston Counties of Texas and has been so employed for the past 15 months. Affiant is a peace officer, certified as such by the laws of the State of Texas. On February 18, 1980 Affiant received a four page typewritten statement from Julie Bush Kinder that is Subscribed and Sworn to in a Dalls [sic] County, Texas. A copy of this statement is attached to and made a part of this affidavit. It is the belief of the affiant that said Julie Bush Kinder is a credible person based upon affiant inquiring with Preston DeShazo, Attorney at Law, Dallas, Texas. Mr. DeShazo stated that he knew Julie Bush Kinder and that she is a credible person.

The affidavit [2] also stated that it was the belief of the affiant that "Bennett Lewis, Jr. on or about February 10, 1980 in Henderson County, Texas did then and there intentionally and knowingly cause the death of Thomas Kinder by shooting him with a gun." It was further alleged in the affidavit that there was at the described premises "a blue overnite bag and articles of clothing belonging to Julie Bush Kinder, that was taken from her car on February 10, 1980. [sic] in order to make room to place the body of Thomas Kinder in trunk of said car."

It is argued by appellant that the search warrant fails to meet the requirements of Art. 18.01(c) and *Aguilar v. Texas,* 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Art. 18.01(c) provides that a search warrant may not be issued pursuant to Art. 18.02 unless the sworn affidavit sets forth sufficient facts to establish probable cause (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or

**2.** 1. THERE IS IN HENDERSON COUNTY, A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS: a single family residence being described as a one story frame house, with a small front porch facing South. Including all other structures, vehicles and places on premises, located as described on attached map a part of this affidavit.

2. THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF THE STATE OF TEXAS AND DESCRIBED AS FOLLOWS: A blue overnite bag and articles of clothing belonging to Julie Bush Kinder, that was taken from her car on FEBRUARY 10, 1980. [sic] in order to make room to place the body of Thomas Kinder in trunk of said car.

3. SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS: Bennett Lewis, Jr. and daughter of Bennett Lewis Jr. a white female known only as Sue and a white male who is common husband of Sue, known only as Mark and other person or persons whose names, descriptions and identities are unknown to affiant.

4. IT IS THE BELIEF OF AFFIANT, AND HE HEREBY CHARGES AND ACCUSES, THAT: Bennett Lewis, Jr. on or about February 10, 1980 in Henderson County, Texas did then and there intentionally and knowingly cause the death of Thomas Kinder by shooting him with a gun.

on the particular person, place, or thing to be searched.

Although the affidavit is divided into five numbered paragraphs, appellant's complaint is directed at the fifth paragraph quoted above.

It is said in *Jones v. State,* 568 S.W.2d 847, 854 (Tex.Cr.App.1978); cert. denied 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352:

It is well established that an affidavit in support of either an arrest warrant or a search warrant must provide the magistrate with 'sufficient information to support an independent judgment that probable cause exists for the warrant.' *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, 564, 91 S.Ct. 1031 [1034], 28 L.Ed.2d 306 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The information with which the magistrate may be supplied may be either the 'direct personal observations of the affiant,' *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), or hearsay information. *Aguilar v. Texas, supra; Jones v. United States, supra.* Where hearsay information is supplied to an affiant by an informant, the affidavit must contain underlying circumstances from which the informant concluded that a crime had been committed and some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable.

While we are ordinarily limited to the four corners of the search warrant affidavit in determining the sufficiency of the probable cause, we may interpret affidavits or search warrants in a common sense and realistic manner, "and the magistrate who reviews an affidavit may draw inferences from the facts contained in it." *Jones v. State, supra,* and cases cited therein.

■ There was attached to the affidavit of Officer O'Brien the affidavit of Julie Bush Kinder, wife of the deceased, Thomas Kinder, in which she swore to certain facts, one of which was that appellant told her that he had killed Thomas Kinder and offered to show her his body. She further swore that appellant talked of how he would get rid of the deceased's body, and that appellant forced her to accompany him and his brother-in-law to the location of the deceased's body where she watched as the body was put into the trunk of her car. The three of them, she related in the affidavit, then drove down some road and dumped the body out of the car. The affidavit of Julie Bush Kinder contains other evidence of rape, probable kidnapping and assault upon her, and such instrument discloses the source of O'Brien's information. We are of the opinion that the affidavit of O'Brien, which gives the source of his information and belief, and in which he attaches an affidavit of the person who was the source, meets the test of *Aguilar v. Texas, supra,* and supplies the basis for any hearsay contained in O'Brien's affidavit. It supplies the underlying circumstances upon which affiant O'Brien relied in concluding that the informant was credible and that her information was reliable. Some underlying circumstances upon which the informant has based his or her conclusions, and some underlying circumstances from which affiant has concluded that the informant was credible or that his or her information was reliable may be supplied by independent corroboration on the part of the affiant. *Spinelli v. United States, supra; Wood v. State,* 573 S.W.2d 207, 214 (Tex.Cr.App.1978); *Stoddard v. State,* 475 S.W.2d 744, 747 (Tex.Cr.App.1972). Appellant's second ground of error is overruled.

■ The complaint is made in appellant's third ground of error that there was error in admitting evidence obtained by a search warrant that was invalid "because the facts attested to were not so clearly related to the time of the issuance of the warrant as to justify a finding of probable cause at the time." Appellant's argument seems to be that the search warrant was invalid because of the interval in time between the shooting of the deceased and the issuance of the search warrant. *Heredia v. State,* 468 S.W.2d 833 (Tex.Cr.App.1971) is cited by

appellant. We do not believe the facts in *Heredia* are sufficiently close to the instant case as to be helpful. Although *Heredia* does contain the statement "The facts attested to must be so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time," the case was reversed because the time of the offense was not stated in the affidavit, and the jurat was not dated. There was nothing definite as to when the incident described took place, whereas here the exact date of the offense was set out in the affidavit.

*Lopez v. State,* 535 S.W.2d 643 (Tex.Cr. App.1976) cites *Heredia v. State, supra,* and quotes the general statement found in *Heredia.* In the instant case the affiant acted promptly after receiving information from the informant, the wife of the deceased, as to where the shooting of the deceased occurred and who had shot the deceased. There was little or no lapse of time from the escape of Julie Bush Kinder from appellant until she had made an affidavit concerning the shooting and the events thereafter, and such affidavit was delivered to the affiant O'Brien. There were only nine days between the shooting of the deceased and the time the affiant O'Brien filed his affidavit for a search warrant.

The basis for the quoted proposition in *Heredia v. State, supra, Lopez v. State, supra,* and *Peltier v. State,* 626 S.W.2d 30, 32 (Tex.Cr.App.1981) is that facts stated in an affidavit for a search must be current enough that what existed at the time of the affidavit will in all probability still exist at the time of the issuance of the search warrant. There is no such lapse of time in the instant case that would prevent the magistrate from finding probable cause at the time of the issuance of the search warrant. Appellant's third ground of error is overruled.

■ Appellant's fourth and last ground of error challenges the sufficiency of the evidence to sustain a conviction. He says the "circumstance only amounted to a 'strong suspicion' and 'mere probability.'" This ground is overruled. A brief review of the facts discloses that Thomas Kinder and his wife, Julie Bush Kinder, left Dallas to drive to Crockett. They stopped to visit appellant and his family in Henderson County. Soon after they arrived appellant and Thomas Kinder, the deceased, were drinking beer and they drove off in appellant's truck. After about five minutes Julie heard a gun shot. She had seen appellant with a sawed-off shotgun. About five minutes after she heard the gun shot appellant drove up and called to Julie to come out of the trailer house. Appellant told her that deceased was hiding in the bushes because deceased thought he saw some cars that he recognized at another trailer house. He then moved the Kinder car to another location and told Julie to get in the truck with him to drive to where deceased was. Appellant stopped the truck and put the shot gun to Julie's head and told her that he had killed deceased and that if she did not want to die she had better not do anything stupid.

Appellant and Julie went back to the trailer, appellant got the keys to the Kinder car, forced Julie to have sex with him after she had tried to escape and he had caught her and hit her with his fist. Appellant told Julie they were going to get deceased's body later that night and take it some place and dump it. Later the same night appellant got a man named Mark McFarland to bring his gun and go with appellant and Julie. They drove to where deceased's body was lying and appellant and Mark dragged deceased's body to the Kinder car, in the presence of Julie, and placed it in the trunk of the car. Appellant then drove down the highway, turned off on a road, stopped and pulled deceased's body out of the trunk and let it drop on the ground.

Picture exhibits were offered showing the blood on the ground identified as the place of the shooting, Michelob beer bottles, the body of deceased with a large hole in his back and two wounds to the chest. Julie testified that she was required to help appellant, his sister Sue and Mark wash the Kinder car to remove fingerprints. She further testified that appellant said he had

**488**

to get rid of the gun, and Sue brought some white paper and silver tape and she wrapped the gun with it; she believed appellant's father buried the gun. She also testified about how the Kinder car was driven and parked near a cemetery, and appellant's father and Mark were standing watch while appellant moved it to that location.

We have outlined only a part of the evidence which relates the actual shooting and the events that occurred soon afterward. The court included a circumstantial evidence paragraph in the charge since there were no witnesses to the shooting.

It is said in *Moore v. State,* 532 S.W.2d 333, 337 (Tex.Cr.App.1976):

In determining whether circumstantial evidence is sufficient to support a conviction, each case must necessarily be tested by its own facts. (Citing case.)

Ordinarily, the test on appeal is whether there was evidence from which the jurors (advised of the restrictions the law places upon them in condemning one on circumstantial evidence) might reasonably conclude that every reasonable hypothesis other than guilt was excluded.... Mere presence in the vicinity of a crime, even when coupled with flight, is not alone sufficient to sustain a conviction.

We are convinced from the record before us that there was ample evidence from which the jurors might reasonably conclude that every reasonable hypothesis other than guilt of appellant was excluded.

Judgment of the trial court is affirmed.