NO.
12-06-00384-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

MARCIA GAYLE KELLY,   §          APPEAL FROM THE 420TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          NACOGDOCHES
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            We
withdraw our opinion delivered on January 23, 2008, and substitute the
following opinion in its place.

            Marcia
Gayle Kelly appeals her conviction for capital murder.  In three issues, she argues that the trial
court erred when it allowed her statement to the police to be admitted, that
the trial court should have moved the trial because of pretrial publicity, and
that the trial court should have granted her motion for a new trial.  We affirm.

 

Background

            Because Appellant does not
contest the sufficiency of the evidence, we will briefly state the facts that
support the conviction.  James Kelly,
Appellant’s husband, was shot to death while he slept.  The police learned that Appellant had offered
to pay several juveniles to kill Kelly. 
The police invited Appellant to the sheriff’s office to answer questions.  While there, Appellant signed a written
statement.  In that statement she
admitted hearing some of the juveniles make a statement about wanting to kill
her husband, but did not admit to offering them anything to kill her husband.








            A Nacogdoches County grand jury
indicted Appellant for the felony offense of capital murder, alleging that she
offered or gave another person money and a vehicle to shoot James Kelly and
that her actions caused Kelly’s death. 
Prior to trial, Appellant filed motions to suppress her statement to the
police officers and to move the trial from Nacogdoches County.  The trial court held a hearing on each issue
and decided that the statement could be admitted and that the trial should
remain in Nacogdoches County.  Appellant
was convicted as charged, and the court assessed punishment of life
imprisonment.  Following the trial,
Appellant filed a motion for new trial, alleging that a juror engaged in
misconduct.  The trial court held a
hearing and denied the motion for new trial. 
This appeal followed. 

 

Custodial Interrogation

            In her first issue, Appellant argues
that the trial court erred when it overruled her motion to suppress her
statement to the police.  Specifically,
she argues that she was subjected to a custodial interrogation without being
advised of her constitutional rights and that her statement to the police
should have been suppressed for that reason. 


Applicable
Law and Standard of Review

            When the police wish to
interrogate a person who is in custody, they must advise the person that she
has the right to remain silent, that any statement she makes can be used
against her, and that she has a right to an attorney.  Miranda v. Arizona, 384 U.S.
436, 444, 86 S. Ct. 1602, 1612 16 L. Ed. 2d 694 (1966).[1]  Generally, the state may not use a statement
obtained from the custodial interrogation if these warnings, or their
equivalent, are not given.  Id.  

            A person is in “custody” only if,
under the circumstances, a reasonable person would believe that her freedom of
movement was restrained to the degree associated with a formal arrest.  Herrera v. State, No.
PD-1986-05, 2007 Tex. Crim. App. LEXIS 1675, at *9–10 (Tex. Crim. App. Nov. 21,
2007) (citing Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim.
App. 1996)); see also Stansbury v. California, 511 U.S. 318, 322,
325, 114 S. Ct. 1526, 1529–30, 128 L. Ed. 2d 293 (1994).[2]  This test is an objective one.  See Herrera, 2007
Tex. Crim. App. LEXIS 1675, at *10.  The
subjective belief of law enforcement officials about whether a person is a
suspect is not important unless that belief was somehow conveyed to the person
who was questioned.  Herrera,
2007 Tex. Crim. App. LEXIS 1675, at *10.  

            We review a trial court’s ruling on
a motion to suppress in the light most favorable to the ruling.  See State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
The trial court is the trier of fact, and we afford almost total
deference to the trial court’s factual conclusions.  See Wiede v. State, 214 S.W.3d
17, 24–25 (Tex. Crim. App. 2007).  We
afford the same deference to the trial court’s rulings on “application of law
to fact questions,” also known as “mixed questions of law and fact,” if the
resolution of those questions turns on an evaluation of credibility and
demeanor.  Montanez v. State,
195 S.W.3d 101, 106 (Tex. Crim. App. 2006). 
We review de novo wholly legal conclusions as well as mixed questions of
law and fact that do not turn on an evaluation of credibility and demeanor.  Id.

Analysis

            Appellant argues that her statement
should have been suppressed because she was in custody  when she was questioned and was not given Miranda
warnings until the interrogation had proceeded for some time.  She cites Dowthitt, 931 S.W.2d
at 254, for the proposition that the question of whether she was in custody
turns on whether probable cause existed at the time of the questioning, the
subjective intent of the police, the focus of the police investigation, and the
subjective belief of the defendant.

            In fact, the court in Dowthitt
notes that this subjective test for “custody” has been replaced by an objective
test.  Id. at 254–55.  The objective test for whether a person is in
custody includes the following factors: (1) whether the suspect is physically
deprived of her freedom of action in any significant way, (2) whether a law
enforcement officer tells the suspect that she cannot leave, (3) whether law
enforcement officers create a situation that would lead a reasonable person to
believe that her freedom of movement has been significantly restricted, and (4)
whether there is probable cause to arrest, that is “manifested” to the suspect,
and law enforcement officers do not tell the suspect that she is free to
leave.  Id. at 255; see
also Herrera, 2007 Tex. Crim. App. LEXIS 1675, at *9–10.

            Applying these factors, we hold that
the trial court did not err when it denied Appellant’s motion to suppress.  The initial conversation with Appellant was a
voluntary encounter, and Appellant was not in custody.  The police invited Appellant to discuss the
matter with them, and they did not restrict her freedom of movement, tell her
she could not leave, or arrest her.  The
police officer testified that Appellant was given Miranda warnings
about twenty minutes into the police interview. 
It appears that she was not free to leave after that point.  But before the warnings were given, there was
nothing to lead a reasonable person in Appellant’s position to believe that her
freedom of movement was restricted.  

            Appellant did ask if she could go to
attend to funeral arrangements.  That
request came early in the conversation, and the police politely told her their
questions would not take long.  A
reasonable person would conclude, as Appellant apparently did, that this was
not a requirement that she stay, but a reassertion that the conversation was a
voluntary one and that she would leave the interview at a time of her
choosing.  If the police had determined
that they had probable cause to arrest Appellant, this information was not conveyed
to Appellant before her rights were read to her.  Nor was she confronted with information
contrary to her assertions to the police, or accused of being involved in her
husband’s murder before the police advised her of her Miranda
rights.

            Because Appellant was not in custody
for the initial part of the interview, the police were not required to give her
Miranda warnings before talking to her.  Therefore, the trial court did not err when
it denied Appellant’s motion to suppress her statement.[3]  We overrule Appellant’s first issue.

 

 

Pretrial Publicity

            In her second issue, Appellant
argues that the trial court erred in denying her motion for change of venue
because of pretrial publicity.

Applicable
Law and Standard of Review 

            A change of venue may be granted in
any felony or misdemeanor case punishable by confinement on the written motion
of the defendant if there exists in the county where the prosecution is
commenced so great a prejudice against the defendant that she cannot obtain a
fair and impartial trial.  Tex. Code Crim. Proc. Ann. art. 31.03
(Vernon Supp. 2007).  When ruling on such
a motion, the trial court must determine whether the outside influences
affecting the “community climate of opinion as to a defendant are inherently
suspect.”  Renteria v. State,
206 S.W.3d 689, 709 (Tex. Crim. App. 2006) (citing DeBlanc v. State,
799 S.W.2d 701, 704 (Tex. Crim. App. 1990)). 
This is not a test of whether there had been publicity about the charged
offense.  Id.  Rather, for a defendant to prevail on a
motion to change venue, she must demonstrate that publicity about the case is
pervasive, prejudicial, and inflammatory to the extent that an “actual,
identifiable prejudice attributable to pretrial publicity on the part of the
community from which members of the jury will come.”  Id.  The court in Renteria stated
that it was a “heavy burden” on the defendant “to prove the existence of such
prejudice in the community [and] that the likelihood of obtaining a fair and
impartial trial jury is doubtful.”  Id.


            We review the court’s ruling on a
motion for a change of venue for an abuse of discretion. Renteria,
206 S.W.3d at 709.  

Analysis

            This case involved a murder for hire
in Nacogdoches County in which Appellant was accused of hiring juveniles to
murder her husband.  It received media
attention.  By Appellant’s count there
were twenty–three articles in the local paper about the story and at least six
television news stories, some of which were repeated multiple times.  

            But the question for the trial court
was not whether there was pretrial publicity. 
As the Supreme Court has stated, in the context of a high profile case, “scarcely
any of those best qualified to serve as jurors will not have formed some
impression or opinion as to the merits of the case.”  Irvin v. Dowd, 366 U.S. 717,
722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751 (1961).  We must therefore direct our attention to the
evidence to determine if there was an intolerable atmosphere of prejudice.  See Beets v. State, 767 S.W.2d
711, 744 (Tex. Crim. App. 1988) (op. on reh’g). 
One way to show that such an atmosphere of prejudice existed is to show
that the pretrial media coverage was “pervasive, prejudicial, and inflammatory.”  See Renteria, 206 S.W.3d
at 709.  

            Appellant argues that there is
evidence of such an atmosphere in the record. 
Specifically, she points to the quoted statements of Sheriff Kerss.  Sheriff Kerss told the media that Appellant
offered to pay to have her husband killed, that the crime was premeditated and
ruthlessly carried out, and that Appellant had been trying to have her husband
killed for some time.  The first
statement is a simple statement of the case. 
That Appellant had been trying to accomplish this end for some time and
that the crime was premeditated and ruthlessly carried out invite the listener
to be prejudiced toward Appellant.  But
these statements were isolated.  We were
able to locate them only one time each, and the remainder of the media coverage
was straightforward and without statements or comments about Appellant’s
character or motivation.

            On the whole, the media coverage was
not the pervasive, prejudicial, and inflammatory coverage that shows a fair and
impartial jury could not be obtained.  By
contrast, in Sheppard v. Maxwell, 384 U.S. 333, 356–57, 86 S. Ct.
1507, 1518–19, 16 L. Ed. 2d 600 (1966), the Supreme Court overturned a
conviction for murder.  That case did
involve pretrial publicity that was prejudicial and inflammatory.  The media reported that

 

“Sheppard had purposely impeded the murder
investigation and must be guilty since he had hired a prominent criminal
lawyer; that Sheppard was a perjurer; that he had sexual relations with
numerous women; that his slain wife had characterized him as a ‘Jekyll-Hyde’;
that he was ‘a bare-faced liar’ because of his testimony as to police
treatment; and, finally, that a woman convict claimed Sheppard to be the father
of her illegitimate child.”

 

 

Id.  The Court determined that this was the kind
of prejudicial and inflammatory publicity that violated the right to due
process. 

            In Irvin, the
rural community in which the trial was held had been subjected to a barrage of
inflammatory publicity immediately prior to trial, such as information about
the defendant’s prior convictions, his confession to twenty-four burglaries and
six murders including the one for which he was tried, and his unaccepted offer
to plead guilty in order to avoid the death sentence.  Irvin, 366 U.S. at 725–26, 81 S. Ct.
at 1644.  As a result, eight of the
twelve jurors had formed an opinion that the defendant was guilty before the
trial began; some went “so far as to say that it would take evidence to
overcome their belief” in his guilt.  Id.,
366 U.S. at 728, 81 S. Ct. at 1645.  In
these circumstances, the Court found actual prejudice against the petitioner to
a degree that rendered a fair trial impossible. 
See also Rideau v. Louisiana, 373 U.S. 723, 724,
726, 83 S. Ct. 1417, 1418–19, 10 L. Ed. 2d 663 (1963) (The Court found that the
trial was “but a hollow formality.”  The
real trial had occurred when tens of thousands of people, in a community of
150,000, had seen and heard the defendant admit his guilt on television.); Rubenstein
v. State, 407 S.W.2d 793, 798 (Tex. Crim. App. 1966) (McDonald, J.,
concurring) (Due process was violated by jurors who witnessed the crime on
television.).

            The pretrial publicity in this case
does not approach the level of pervasive, prejudicial, and inflammatory
pretrial publicity that other courts have found to be violative of due
process.  Nor has Appellant shown that
she was forced to accept a juror who was influenced by any pretrial
publicity.  At the actual seating of the
jury panel, many of the venire members had heard of the matter.  But few expressed that they had made a
decision, and only four potential jurors expressed that they had formed an
opinion about the case.  Three of those
jurors were excused, but one served with no objection from Appellant.[4]   

            In Lewis v. State, 654
S.W.2d 483, 484 (Tex. App.–Tyler 1983, pet. ref’d), we held it “significant
that Appellant did not object to any juror who was seated.” See also Gardner
v. State, 733 S.W.2d 195, 204 (Tex. Crim. App. 1987) (“He does not
contend nor does our review of the entire voir dire examination show that he
was forced to take an objectionable juror.”). 
At least one Texas case has held that a trial court does not abuse its
discretion in overruling a motion for change of venue if an objectionable juror
serves without objection.  See Jones
v. State, 489 S.W.2d 618, 619 (Tex. Crim. App. 1973) (citing Moon
v. State, 169 Tex. Crim. 14, 331 S.W.2d 312 (Tex. Crim. App. 1959)).

            In sum, the pretrial publicity did
not rise to a level that challenged Appellant’s right to a fair trial, and the
trial court did not abuse its discretion when it overruled Appellant’s motion
for a change of venue.  We overrule
Appellant’s second issue.

 

Motion for New Trial

            In her third issue, Appellant argues
that the trial court should have granted her motion for a new trial.

Standard
of Review

            We review a trial court’s ruling on
a motion for new trial for an abuse of discretion.  State v. Herndon, 215 S.W.3d 901, 906
(Tex. Crim. App. 2007).  We must view the
evidence in the light most favorable to the ruling and presume that all
reasonable fact findings were made against the losing party.  See Charles v. State,
146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

Analysis

            Appellant filed a motion for new
trial.  With her motion, she included
affidavits from two witnesses.  The
witnesses said in the affidavits that they observed one of the jurors having
lunch during a break in the trial, that the juror said things about the trial,
and that one of his companions said something about the trial.  A hearing was held on the motion.  One of the affidavit witnesses could not
remember hearing much of the juror’s conversation, and the other testified that
she heard the statements.  The juror and
his lunch companions all testified that the reported part of the conversation
did not happen. 

            Citing Renya v. State,
846 S.W.2d 498, 503 (Tex. App.–Corpus Christi 1993, no pet.), Appellant
concedes that when the evidence conflicts, a trial court’s ruling will
ordinarily not be disturbed on appeal. 
Instead, she argues that the trial court should have granted the motion
for new trial because the State did not file affidavits controverting the
affidavits she had filed.  

            We disagree.  The court in Renya held that
the trial court should have granted the motion for new trial because affidavits
establishing juror misconduct were not controverted.  But we do not understand Renya
to mean that uncontroverted affidavits must be presumed to be true.  The court in Renya relied upon Smith
v. State, 530 S.W.2d 827, 829–30 (Tex. Crim. App. 1975), in which the
court held that uncontroverted affidavits established a fact when the State’s
affidavits did not challenge the relevant assertions.  Renya, 846 S.W.2d at 503. 

            The holding in Renya
is an extension of a logical tool: if a party can, but does not, contest a
factual assertion, the conclusion can be drawn that the fact is true.  For example, in Charles v. State,
146 S.W.3d 204, 210 (Tex. Crim. App. 2004), the court of criminal appeals
discussed affidavits and drew a distinction between facts that “could have been
readily controverted” and those that could not. 
Nevertheless, the court concluded that deference was due to the trial
court’s factual findings “regardless of whether the affidavits are
controverted.”  Id. 

            The Renya decision
does not establish, as Appellant contends, that evidence can be controverted
only by affidavits filed prior to a hearing. 
The rules provide that the State may controvert a motion for new trial, Tex. R. App. P. 21.5, but also
provides for a hearing allowing for presentation of evidence.  Tex.
R. App. P. 21.7.  At the hearing
the State contradicted the factual assertions made in the affidavits.  All of the juror’s lunch companions as well
as the juror in question testified that the relevant conversation did not
occur.  The trial court made findings,
including which witnesses it found to be credible.  The court found the juror and his lunch
companions to be credible and did not make a similar finding for the witnesses
who gave affidavits and testified for Appellant.  

            The trial court was not required to
grant Appellant’s motion for new trial simply because the State did not file
affidavits controverting the assertions contained in the affidavits offered by
Appellant.  The evidence conflicted, and
the trial court’s decision to believe one group of witnesses and not the other
was reasonable, was supported by the record, and is a factual determination to
which we afford deference.  We overrule
Appellant’s third issue.

 

Disposition

            Having overruled Appellant’s three
issues, we affirm the judgment of the trial court.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

Opinion delivered January 24,
2008.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)











[1] Texas has incorporated the Miranda warnings into its
code of criminal procedure and added additional requirements.  See Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2007).  Appellant argues only that she was not warned
as required by Miranda.  





[2] Appellant argues that Stansberry is analogous to this
case.  On remand, the California Supreme
Court held that Stansberry was not in custody when he gave a statement to the
police.  People v. Stansbury,
889 P.2d 588, 594 (Cal. 1995).





[3] At oral argument Appellant contended that the interrogation that
preceded the Miranda warnings was unlawful and poisoned the
statements made after the warnings were given. 
Such tainting is possible, see, e.g., Missouri v.
Seibert, 542 U.S. 600, 604, 124 S. Ct. 2601, 2605, 159 L. Ed. 2d 643
(2004), but is not present in this case because Appellant was not in custody
for the first part of the conversation. 
Consequently, no illegal custodial interrogation tainted the later
questioning. 





[4] It is not clear whether Appellant had exhausted her peremptory
challenges, but she did not request an additional challenge.