# NO. 12-08-00244-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WILLIAM EARL OVERTURF,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 145TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

William Earl Overturf appeals his conviction for intoxication assault. Appellant raises four issues on appeal. We affirm.

### BACKGROUND

As Appellant drove his vehicle around a curve on Durst Street in Nacogdoches, he drifted to the opposite side of the street and collided with a vehicle being driven by Justin Sowell. Both Appellant and Sowell received significant injuries as a result of the wreck. Appellant was trapped in his vehicle for several minutes before emergency responders could free him. He was then transported to Nacogdoches Memorial Hospital for treatment.

Officer Marcus Madden investigated the wreck, and he spoke first with Sowell. Madden then attempted to speak with Appellant, but Appellant was not responsive. Madden continued his investigation and noticed empty beer cans and a prescription drug container in Appellant's vehicle. The prescription was for Clonazepam[1] and was in Appellant's name. Although the prescription had

---

[1] According to the evidence, Clonazepam is a generic drug that contains benzodiazepine. A pharmacist testified that taking the drug could produce side effects including increased drowsiness, dizziness, hallucination, and

been filled with thirty pills only two days earlier and the directions stated to take one pill per day, only twelve pills were in the container. Madden identified the point of impact as being in Sowell's lane and noted skid marks leading from the point of impact to the place where Appellant's vehicle came to rest.

Madden was able to interview Appellant at the hospital. Appellant stated that he did not know how the accident occurred. He told the officer that he was wearing his seatbelt at the time of the accident. Then, incongruently, Appellant stated that he was not driving a car, that he did not own a car, and that he had been walking when the accident occurred. Appellant admitted that he had been drinking. Additionally, Madden noted that Appellant's eyes were glassy and bloodshot and that his speech was slow.

As part of his investigation, Madden asked Appellant to consent to a blood draw. Appellant consented. The blood was tested and found to have an alcohol concentration of 0.05 grams per 100 milliliters of blood and metabolites that correspond to use of cocaine. The hospital staff had performed their own analysis of Appellant's blood, on a sample taken about an hour earlier than the sample taken at Madden's request. That analysis showed an alcohol concentration of 0.08, as well as the presence of cocaine and benzodiazepine.

Appellant was indicted for intoxication assault. The indictment alleged that he used a deadly weapon in the commission of the offense and, for sentencing purposes, that Appellant had a prior felony conviction. Appellant filed a motion for change of venue. Appellant attached to his motion affidavits from two residents of Nacogdoches County claiming that he could not receive a fair trial in Nacogdoches County because of the television and newspaper reports concerning the wreck. Appellant did not furnish the court with the actual news reports or with any summaries of the coverage. Appellant did not present any evidence at a hearing on his motion for change of venue, and the trial court overruled his motion.

Appellant pleaded not guilty at trial, and the jury found him guilty. Appellant pleaded true to an enhancement allegation that he had a prior felony conviction, and the jury found that Appellant used a deadly weapon in committing the intoxication assault. The jury then assessed punishment

_____

disorientation.

2

at imprisonment for nineteen years and a fine of $10,000. This appeal followed.

**PRETRIAL PUBLICITY**

In his fourth issue, Appellant argues that the trial court erred in denying his motion for change of venue because of pretrial publicity.

## Applicable Law and Standard of Review

A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, if there exists in the county where the prosecution is commenced so great a prejudice against the defendant that he cannot obtain a fair and impartial trial. TEX. CODE CRIM. PROC. ANN. art. 31.03 (Vernon 2006). When ruling on such a motion, the trial court must determine whether the outside influences affecting the "community climate of opinion as to a defendant are inherently suspect." *Renteria v. State*, 206 S.W.3d 689, 709 (Tex. Crim. App. 2006) (citing *DeBlanc v. State*, 799 S.W.2d 701, 704 (Tex. Crim. App. 1990)). This is not a test of whether there had been publicity about the charged offense. *Renteria*, 206 S.W.3d at 709. Rather, for a defendant to prevail on a motion to change venue, he must demonstrate that publicity about the case is pervasive, prejudicial, and inflammatory to the extent that there exists an "actual, identifiable prejudice attributable to pretrial publicity on the part of the community from which members of the jury will come." *Id.* The court in *Renteria* stated that it was a "heavy burden" on the defendant "to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial trial jury is doubtful." *Id.* We review the court's ruling on a motion for a change of venue for an abuse of discretion. *Id.*

## Analysis

The victim in this case is the son of a law enforcement officer. Appellant presented affidavit testimony from two witnesses that representatives of the Nacogdoches Police Department had been on television numerous times stating that Appellant is guilty of intoxication assault.

However, there are at least three problems with Appellant's proof. First, Appellant failed to comply with the statutory requirement that his motion be supported by his own affidavit. *See* TEX. CODE CRIM. PROC. ANN. art. 31.03. Instead, Appellant only attached affidavits from two residents

3

of Nacogdoches County.[2]

Second, the question for the trial court was not whether there was pretrial publicity. As the Supreme Court has stated, in the context of a high profile case, "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751 (1961). We must therefore direct our attention to the evidence to determine if there was an intolerable atmosphere of prejudice. *See Beets v. State*, 767 S.W.2d 711, 744 (Tex. Crim. App. 1988) (op. on reh'g). One way to show that such an atmosphere of prejudice existed is to demonstrate that the pretrial media coverage was "pervasive, prejudicial, and inflammatory." *See Renteria*, 206 S.W.3d at 709.

Here, there is no evidence of the actual media coverage. Instead, Appellant simply presented affidavit testimony that, in conclusory form, claimed the media coverage would cause a person to believe that Appellant was guilty. Appellant failed to show that the media reports were the kind of pervasive, prejudicial, and inflammatory coverage that shows a fair and impartial jury could not be obtained. *See id.*

Third, Appellant has not shown that he was forced to accept a juror who was influenced by any pretrial publicity. Appellant did not question any jurors during voir dire about any pretrial publicity, and he did not object to the jury that was selected. In *Lewis v. State*, 654 S.W.2d 483, 484 (Tex. App.–Tyler 1983, pet. ref'd), we held it "significant that Appellant did not object to any juror who was seated." *See also Gardner v. State*, 733 S.W.2d 195, 204 (Tex. Crim. App. 1987) ("He does not contend nor does our review of the entire voir dire examination show that he was forced to take an objectionable juror."). At least one Texas case has held that a trial court does not abuse its discretion in overruling a motion for change of venue if an objectionable juror serves without objection. *See Jones v. State*, 489 S.W.2d 618, 619 (Tex. Crim. App. 1973) (citing *Moon v. State*, 169 Tex. Crim. 14, 331 S.W.2d 312 (Tex. Crim. App. 1959)).

Accordingly, and for the foregoing reasons, we hold that the trial court did not abuse its discretion when it denied Appellant's motion for a change of venue. We overrule Appellant's fourth

---

[2] While Appellant's motion claimed to include an affidavit from Appellant, we have reviewed the motion, its attachments, and the entire record, and found no such affidavit.

issue.

## SUPPRESSION OF EVIDENCE

In his third issue, Appellant contends that the trial court erred in overruling his objection to the admission of the results of the second blood sample. Specifically, Appellant urges that the State failed to show by clear and convincing evidence that he consented to the second blood draw.

**Standard of Review and Applicable Law**

We apply a bifurcated standard of review to evaluate a trial court's ruling on a motion to suppress. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Hernandez v. State*, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998). We give almost total deference to a trial court's determination of historical facts that are supported by the record, while conducting a de novo review of the trial court's application of the law to those facts. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When determining whether evidence should be suppressed, the trial court is the sole trier of fact. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). As such, it may choose to believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *Id.* Furthermore, when, as in the instant case, "the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.*; *see also State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. The Texas Constitution contains a similar prohibition. *See* TEX. CONST. art. I, § 9. A warrantless search is unreasonable unless it falls within certain specific exceptions, one of which is consent to search given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).

**Analysis**

Madden testified that Appellant gave consent for a blood specimen to be taken. Appellant argues that consent was not shown because he did not sign the statutory warning form. However, the statutory warning form contains only one place for Appellant to sign. Above that signature line

5

are check boxes for the officer to indicate that the driver refused to sign the document or refused to consent to the taking of a specimen. Accordingly, a signature is a way for a suspect to refuse to cooperate. As such, Appellant's failure to sign the form is consistent with his consenting to the search rather than evidence that he refused to consent. *See also* TEX. TRANSP. CODE ANN. § 724.031 (Vernon 1999) (suspect signs form if he refuses to provide sample).

There was no evidence that Appellant declined to consent to the search. The trial court did not abuse its discretion by accepting Madden's testimony and impliedly finding that Appellant gave valid consent for the taking of the blood specimen. After reviewing the record, we conclude that the trial court could have reasonably found that Appellant's consent was given freely, unequivocally, and without duress or coercion. Therefore, the trial court did not err in admitting the analysis of the blood sample into evidence. We overrule Appellant's third issue.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, Appellant argues that the evidence is insufficient to establish that he was intoxicated when the wreck occurred.

### Standard of Review

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

In reviewing factual sufficiency, we consider all the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to

6

disprove that fact. ***Santellan v. State***, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. ***Id.***; *see* ***Clewis v. State***, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. ***Van Zandt v. State***, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. ***Johnson v. State***, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." ***Ortiz v. State***, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); *see also* ***Watson v. State***, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); ***Sims v. State***, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

Under either the legal sufficiency or factual sufficiency standard, our role is that of appellate review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. ***Wesbrook v. State***, 29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. ***Sharp v. State***, 707 S.W.2d 611, 614.

The legal and factual sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. ***Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also* ***Wooley v. State***, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." ***Malik***, 953 S.W.2d at 240.

As limited by the indictment, a person commits the offense of intoxication assault by operating a motor vehicle in a public place while intoxicated and, by reason of that intoxication, causing serious bodily injury to another. Tex. Penal Code Ann. § 49.07(a)(1) (Vernon 2003 &

7

Supp. 2008). "Intoxicated" means either not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body, or, as relevant here, having an alcohol concentration of 0.08 grams or more of alcohol per 100 milliliters of blood. TEX. PENAL CODE ANN. §§ 49.01(2), (1)(B) (Vernon 2003).

**Analysis**

Appellant does not argue that he was not driving a vehicle in a public place or that Sowell did not suffer serious bodily injury, or even that he did not cause the accident. Instead, Appellant argues that there is insufficient evidence that he was intoxicated. Appellant's argument is two pronged. First, he argues that there is insufficient evidence that he had a blood alcohol concentration greater than 0.08. Second, he argues that there is not evidence that he was intoxicated even if the fact finder considered the presence of other potential intoxicants in his system.

Physical evidence at the scene of the wreck supported the conclusion that Appellant had used intoxicants. Specifically, the officer found a prescription drug container and empty beer cans in Appellant's vehicle. In addition, the officer observed that Appellant had glassy, bloodshot eyes and slow speech. Also, Appellant gave inconsistent and unbelievable statements including a claim that he was not driving, despite the fact that he had been trapped in his vehicle after the wreck.

The State also presented evidence of laboratory analysis of Appellant's blood. The medical records showed that Appellant had a blood alcohol concentration of 0.08 shortly after the wreck. Cocaine and benzodiazepine were also found in Appellant's blood. An analysis of Appellant's blood taken several hours after the wreck showed that Appellant had a blood alcohol concentration of 0.05 and cocaine metabolites in his system. Finally, there was expert testimony that benzodiazepine and cocaine could cause disorientation as well as hallucinations and that cocaine could cause poor judgment. Additionally, the expert testified that the synergistic effect of those drugs when combined with alcohol, while unpredictable, can cause a greater intoxicating effect than any of the constituent intoxicants.

Viewing the evidence in the light most favorable to the jury's verdict, the jury could have reasonably determined that Appellant lacked the normal use of his mental or physical faculties from some combination of alcohol, prescription drugs, and cocaine that caused him to drive his vehicle

into Sowell's lane of travel, causing the wreck. The ensuing wreck caused Sowell to sustain serious bodily injury. Therefore, the evidence is legally sufficient to support the jury's verdict.

With respect to the factual sufficiency of the verdict, review of all of the evidence without the light most favorable to the verdict reveals some evidence that is contrary to the verdict. Specifically, Appellant's second blood sample showed that Appellant's blood alcohol level was under the legal limit. Further, there was no testimony from any witness who saw Appellant immediately before the wreck, and thus, there was no direct testimony about his state of intoxication before the wreck.

Nonetheless, we must consider this evidence in the context of the record as a whole. Even with an alcohol concentration of less than 0.08, an individual is intoxicated if he lacks the normal use of his mental or physical faculties as a result of alcohol or drugs. In this case, the jury could have rationally determined that Appellant was intoxicated based on the level of alcohol in his blood and the presence of other intoxicants when taken in conjunction with the other testimony about Appellant's demeanor after the wreck. Our review of the record as a whole, with consideration given to all of the evidence both for and against the jury's finding, has not caused us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the jury's verdict.

We overrule Appellant's first and second issues.

## DISPOSITION

Having overruled Appellant's four issues, we *affirm* the judgment of the trial court.


BRIAN HOYLE
Justice


Opinion delivered May 13, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)

9